UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

———————————————————x
IN RE HARTFORD MUTUAL FUNDS FEE          :     MASTER FILE: 3:04CV00344 (AWT)
LITIGATION                               :
                                         :     Dated:  November 18, 2004
THIS DOCUMENT RELATES TO:  ALL           :
ACTIONS                                  :
                                         :
———————————————————x

## AFFIDAVIT OF JOHN E. BRUNO

      I, John E. Bruno, being duly sworn, depose and say:

1.     I am over eighteen years of age and believe in the obligations of an oath.

2.     I am a Vice President and Counsel of Wellington Management Company, LLP.  I am familiar with the matters set forth herein, and believe them to be true.

3.     Attached as Exhibit A to this Affidavit is a true and accurate copy of the "INVESTMENT SUB-ADVISORY AGREEMENT," dated February 19, 2002, between Hartford Investment Financial Services, LLC and Wellington Management Company, LLP.

4.     Attached as Exhibit B to this Affidavit is a true and accurate copy of the "INVESTMENT SUB-ADVISORY AGREEMENT," dated March 3, 1997, and most recently

MARY FRANCES ENNIS
Commonwealth of Massachusetts
My Commission Expires
February 6, 2009

{B0347364; 1}

Exhibit

A

– cont'd

## INVESTMENT SUB-ADVISORY AGREEMENT

This Investment Sub-Advisory Agreement is made by and between Hartford Investment Financial Services, LLC, a Delaware limited liability company ("HIFSCO") and Wellington Management Company, LLP, a Massachusetts limited liability partnership ("Wellington Management").

WHEREAS, HIFSCO has entered into an agreement for the provision of investment management services to Hartford-Fortis Series Fund, Inc. (the "Company"), and

WHEREAS, HIFSCO wishes to engage the services of Wellington Management as Sub-Adviser to each series of shares of the Company listed on Attachment A (each, a "Portfolio" and together the "Portfolios"), and

WHEREAS, Wellington Management is willing to perform advisory services on behalf of the Portfolios upon the terms and conditions and for the compensation hereinafter set forth.

NOW, THEREFORE, in consideration of the promises and mutual agreements herein contained, the parties hereto agree as follows:

1.  HIFSCO hereby employs Wellington Management to serve as Sub-Adviser with respect to the assets of the Portfolios and to perform the services hereinafter set forth subject to the terms and conditions of the investment objectives, policies and restrictions of each Portfolio, and Wellington Management hereby accepts such employment and agrees during such period to assume the obligations herein set forth for the compensation herein provided.

2.  Wellington Management shall evaluate and implement an investment program appropriate for each Portfolio which program shall be amended and updated from time to time as financial and other economic conditions change as determined by HIFSCO and Wellington Management.

3.  Wellington Management, in consultation with HIFSCO when appropriate, will make all determinations with respect to the investment of the assets of the Portfolios and the purchase or sale of portfolio securities, and shall take such steps as may be necessary to implement the same. Such determinations and services shall include advising the Company's Board of Directors of the manner in which voting rights, rights to consent to corporate action, and any other non-investment decisions pertaining to a Portfolio's securities should be exercised.

4.  Wellington Management will regularly furnish reports with respect to the Portfolios at periodic meetings of the Company's Board of Directors and at such other times as may be reasonably requested by the Company's Board of Directors, which reports shall include Wellington Management's economic outlook and investment strategy and a discussion of the portfolio activity and the performance of the Portfolios since the last report. Copies of all such reports shall be furnished to HIFSCO for examination and review within a

reasonable time prior to the presentation of such reports to the Company's Board of Directors.

5.   Wellington Management shall manage each Portfolio in conformity with the Company's Articles of Incorporation and By-laws, each as amended from time to time, and the Investment Company Act of 1940, as amended, other applicable laws, and the investment objectives, policies and restrictions of each Portfolio as set forth in the Portfolios' prospectus and statement of additional information, or any investment guidelines or other instructions received in writing from HIFSCO, and subject further to such policies and instructions as the Board of Directors or HIFSCO may from time to time establish and deliver to Wellington Management.

In addition, Wellington Management will cause the Portfolios to comply with the requirements of (a) Section 851(b)(2) of the Internal Revenue Code of 1986, as amended (the "Code") regarding derivation of income from specified investment activities, and (b) Section 851(b)(4) of the Code regarding diversification of the Portfolios' assets.

6.   Wellington Management will select the brokers or dealers that will execute the purchases and sales of portfolio securities for the Portfolios and place, in the name of each Portfolio or its nominees, all such orders. When placing such orders, Wellington Management shall use its best efforts to obtain the best net security price available for each Portfolio. Subject to and in accordance with any directions that the Board of Directors may issue from time to time, Wellington Management may also be authorized to effect individual securities transactions at commission rates in excess of the minimum commission rates available, if Wellington Management determines in good faith that such amount of commission is reasonable in relation to the value of the brokerage or research services provided by such broker or dealer, viewed in terms of either that particular transaction or Wellington Management's overall responsibilities with respect to the Portfolios and Wellington Management's other advisory clients. The execution of such transactions shall not be deemed to represent an unlawful act or breach of any duty created by this Agreement or otherwise. Wellington Management will promptly communicate to the Board of Directors such information relating to portfolio transactions as they may reasonably request.

7.   (a)   As compensation for the performance of the services by Wellington Management hereunder, HIFSCO shall pay to Wellington Management, as promptly as possible after the last day of each calendar year quarter, a fee accrued daily and paid quarterly, based upon the following annual rates and calculated based upon the average daily net asset values of each of the Portfolios as follows:

|                                      | Assets             | Annual Rate |
|--------------------------------------|--------------------|-------------|
| The Hartford SmallCap Growth Fund    | First $50 Million  | 0.400%      |
| The Hartford Growth Opportunities Fund | Next $100 Million | 0.300%      |
| The Hartford Value Opportunities Fund | Next $350 Million | 0.250%      |
|                                      | Over $500 Million  | 0.200%      |
|                                      |                    |             |
| The Hartford Growth Fund             | First $50 Million  | 0.400%      |
|                                      | Next $100 Million  | 0.300%      |
|                                      | Next $350 Million  | 0.250%      |
|                                      | Next $500 Million  | 0.200%      |
|                                      | Over $1 Billion    | 0.175%      |

Wellington Management may waive all or a portion of its fees from time to time as agreed between the parties.

If it is necessary to calculate the fee for a period of time which is not a calendar quarter, then the fee shall be (i) calculated at the annual rates provided above but prorated for the number of days elapsed in the period in question, as a percentage of the total number of days in such period, (ii) based upon the average of each Portfolio's daily net asset value for the period in question, and (iii) paid within a reasonable time after the close of such period.

(b) Wellington Management will bear all expenses in connection with the performance of its services under this Agreement.

(c) Wellington Management will not be entitled to receive any payment for the performance of its services hereunder from the Portfolios.

(d) Wellington Management agrees to notify HIFSCO of any change in Wellington Management's personnel that are directly involved in the management of the Portfolios within a reasonable time following the occurrence of such change.

8. Wellington Management shall not be liable for any loss or losses sustained by reason of any investment including the purchase, holding or sale of any security as long as Wellington Management shall have acted in good faith and with due care; provided, however, that no provision in this Agreement shall be deemed to protect Wellington Management, and Wellington Management shall indemnify HIFSCO, for any and all loss, damage, judgment, fine or award paid in settlement and attorney's fees related to Wellington Management's willful misfeasance, bad faith or gross negligence in the performance of its duties or by reason of its reckless disregard of its obligations and duties under this Agreement.

9.  (a)  This Agreement shall become effective on February 19, 2002 and shall continue in effect through February 18, 2004. This Agreement, unless sooner terminated in accordance with 9(b) below, shall continue in effect from year to year thereafter provided that its continuance is specifically approved at least annually (1) by a vote of the majority of the members of the Board of Directors of the Company or by a vote of a majority of the outstanding voting securities of each Portfolio, and (2) in either event, by the vote of a majority of the members of the Company's Board of Directors who are not parties to this Agreement or interested persons of any such party, cast in person at a meeting called for the purpose of voting on this Agreement.

(b)  This Agreement (1) may be terminated with respect to each Portfolio at any time without the payment of any penalty either by vote of the members of the Board of Directors of the Company or by a vote of a majority of any Portfolio's outstanding voting securities, or by HIFSCO on written notice to Wellington Management, (2) shall immediately terminate in the event of its assignment, (3) may be terminated by Wellington Management on ninety days' prior written notice to HIFSCO, but such termination will not be effective until HIFSCO shall have contracted with one or more persons to serve as a successor Sub-Adviser for the Portfolio (or HIFSCO or an affiliate of HIFSCO agrees to manage the Portfolio) and such person(s) shall have assumed such position, and (4) will terminate automatically upon termination of the advisory agreement between HIFSCO and the Company of even date herewith.

(c)  As used in this Agreement, the terms "assignment," "interested parties" and "vote of a majority of the Company's outstanding voting securities" shall have the meanings set forth for such terms in the Investment Company Act of 1940, as amended.

(d)  Any notice under this Agreement shall be given in writing, addressed and delivered, or mailed postpaid, to the other party or parties at the current office address provided by each party.

10.  Nothing in this Agreement shall limit or restrict the right of any partner, officer, or employee of Wellington Management to engage in any business or to devote his or her time and attention in part to the management or other aspects of any other business, whether of a similar nature or a dissimilar nature, nor to limit or restrict the right of Wellington Management to engage in any other business or to render services of any kind to any other corporation, firm, individual or association.

11.  HIFSCO agrees that neither it nor any affiliate of HIFSCO will use Wellington Management's name or refer to Wellington Management or Wellington Management's clients in marketing and promotional materials without prior notification to and authorization by Wellington Management, such authorization not to be unreasonably withheld.

12.  If any provision of this Agreement shall be held or made invalid by a court decision, statute, rule or otherwise, the remainder of this Agreement shall not be affected thereby.

13.   The amendment of this Agreement for the sole purpose of adding one or more Portfolios shall not be deemed an amendment affecting an already existing Portfolio and requiring the approval of shareholders of that Portfolio.

14.   To the extent that federal securities laws do not apply, this Agreement and all performance hereunder shall be governed by the laws of the State of Connecticut which apply to contracts made and to be performed in the State of Connecticut.

   [The remainder of this page is left blank intentionally.]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed on the 19th day of February 2002.

HARTFORD INVESTMENT FINANCIAL
SERVICES, LLC

By: _____

Name:  David M. Znamierowski
Title: Senior Vice President


WELLINGTON MANAGEMENT COMPANY, LLP


By: _____

Name:  Duncan McFarland
Title: Chairman

O:\WP\KC\Mutual Funds\The Hartford Mutual Funds II, Inc\Agreements and Plans\subadv agr - 2002 Wellington.doc

Exhibit
B

# INVESTMENT SUB-ADVISORY AGREEMENT

This Investment Sub-Advisory Agreement is made by and between Hartford Investment Financial Services Company, a Delaware corporation ("HIFSCO") and Wellington Management Company, LLP, a Massachusetts partnership ("Wellington Management").

**WHEREAS,** HIFSCO has entered into an agreement for the provision of investment management services to the ITT Hartford Mutual Funds, Inc. (the "Company") currently comprised of the ITT Hartford Small Company Fund, ITT Hartford Capital Appreciation Fund, ITT Hartford International Opportunities Fund, ITT Hartford Dividend and Growth Fund, ITT Hartford Stock Fund, ITT Hartford Advisers Fund, ITT Hartford Bond Income Strategy Fund and ITT Hartford Money Market Fund,  and

**WHEREAS,** HIFSCO wishes to engage the services of Wellington Management Company as Sub-Adviser to the ITT Hartford Small Company Fund, ITT Hartford Capital Appreciation Fund, ITT Hartford International Opportunities Fund, ITT Hartford Dividend and Growth Fund, ITT Hartford Stock Fund and ITT Hartford Advisers Fund (each a "Portfolio" and together the "Portfolios"), and

**WHEREAS,** Wellington Management is willing to perform advisory services on behalf of the Portfolios upon the terms and conditions and for the compensation hereinafter set forth.

**NOW, THEREFORE,** in consideration of the promises and mutual agreements herein contained, the parties hereto agree as follows:

1.  HIFSCO hereby employs Wellington Management to serve as Sub-Adviser with respect to the assets of the Portfolios and to perform the services hereinafter set forth subject to the terms and conditions of the investment objectives, policies and restrictions of each Portfolio, and Wellington Management hereby accepts such employment and agrees during such period to assume the obligations herein set forth for the compensation herein provided.

2.  Wellington Management shall evaluate and implement an investment program appropriate for each Portfolio which program shall be amended and updated from time to time as financial and other economic conditions change as determined by HIFSCO and Wellington Management.

3.  Wellington Management, in consultation with HIFSCO when appropriate,  will make all determinations with respect to the investment of the assets of the Portfolios and the purchase or sale of portfolio securities, and shall take such steps as may be necessary to implement the same. Such determinations and services shall include advising the Company's Board of Directors of the manner in which voting rights, rights to consent to corporate action, and any other non-investment decisions pertaining to a Portfolio's securities should be exercised.

4.  Wellington Management will regularly furnish reports with respect to the Portfolios at periodic meetings of the Company's Board of Directors and at such other times as may be reasonably requested by the Company's Board of Directors, which reports shall include Wellington Management's economic outlook and investment strategy and a discussion of the portfolio activity and the performance of the Portfolios since the last report. Copies of all such reports shall be furnished to HIFSCO for examination and review within a reasonable time prior to the presentation of such reports to the Company's Board of Directors.

5.  Wellington Management shall manage each Portfolio in conformity with the Company's Articles of Incorporation and By-laws, each as amended from time to time, and the Investment Company Act of 1940, as amended, other applicable laws, and to the investment objectives, policies and restrictions of each Portfolio as set forth in the Portfolios' prospectus and statement of additional information, or any investment guidelines or other instructions received in writing from HIFSCO, and subject further to such policies and instructions as the Board of Directors or HIFSCO may from time to time establish and deliver to Wellington Management.

    In addition, Wellington Management will cause the Portfolios to comply with the requirements of (a) Section 851(b)(2) of the Internal Revenue Code of 1986, as amended (the "Code") regarding derivation of income from specified investment activities; (b) Section 851(b)(3) of the Code regarding the limitation of gains from the disposition of securities and certain other investments held less than three months; and  (c) Section 851(b)(4) of the Code regarding diversification of the Portfolios' assets.

6.  Wellington Management will select the brokers or dealers that will execute the purchases and sales of portfolio securities for the Portfolios and place, in the name of each Portfolio or its nominees, all such orders.  When placing such orders, Wellington Management shall use its best efforts to obtain the best net security price available for each Portfolio. Subject to and in accordance with any directions that the Board of Directors may issue from time to time, Wellington Management may also be authorized to effect individual securities transactions at commission rates in excess of the minimum commission rates available, if Wellington Management determines in good faith that such amount of commission is reasonable in relation to the value of the brokerage or research services provided by such broker or dealer, viewed in terms of either that particular transaction or Wellington Management's overall responsibilities with respect to the Portfolios and Wellington Management's other advisory clients. The execution of such transactions shall not be deemed to represent an unlawful act or breach of any duty created by this Agreement or otherwise. Wellington Management will promptly communicate to the Board of Directors such information relating to portfolio transactions as they may reasonably request.

7.  (a)    As compensation for the performance of the services by Wellington Management hereunder, HIFSCO shall pay to Wellington Management, as promptly as possible after the last day of each calendar year quarter, a fee accrued daily and paid quarterly, based upon the

following annual rates and calculated based upon the average daily net asset values of each of the Portfolios as follows:

*ITT Hartford Small Company Fund, ITT Hartford Capital Appreciation Fund and ITT Hartford International Opportunities Fund.*

| Net Asset Value | Annual Rate |
|---|---|
| First $50,000,000 | 0.40% |
| Next $100,000,000 | 0.30% |
| Next $350,000,000 | 0.25% |
| Next $500,000,000 | 0.20% |
| Over $1 Billion | 0.175% |

*ITT Hartford Dividend and Growth Fund,  ITT Hartford Stock Fund and ITT Hartford Advisers Fund.*

| Net Asset Value | Annual Rate |
|---|---|
| First $50,000,000 | 0.325% |
| Next $100,000,000 | 0.25% |
| Next $350,000,000 | 0.20% |
| Next $500,000,000 | 0.15% |
| Over $1 Billion | 0.125% |

Wellington Management may  waive all or a portion of its fees from time to time as agreed between the parties.

If it is necessary to calculate the fee for a period of time which is not a calendar quarter, then the fee shall be (i) calculated at the annual rates provided above but prorated for the number of days elapsed in the period in question, as a percentage of the total number of days in such period, (ii) based upon the average of each Portfolio's daily net asset value for the period in question, and (iii) paid within a reasonable time after the close of such period.

(b)     Wellington Management will bear all expenses in connection with the performance of its services under this Agreement.

(c)     Wellington Management will not be entitled to receive any payment for the performance of its services hereunder from the Portfolios.

3

(d)   Wellington Management agrees to notify HIFSCO of any change in Wellington Management's personnel that are directly involved in the management of the Portfolios within a reasonable time following the occurrence of such change.

8.   Wellington Management shall not be liable for any loss or losses sustained by reason of any investment including the purchase, holding or sale of any security as long as Wellington Management shall have acted in good faith and with due care; provided, however, that no provision in this Agreement shall be deemed to protect Wellington Management, and Wellington Management shall indemnify HIFSCO, for any and all loss, damage, judgment, fine or award paid in settlement and attorney's fees related to Wellington Managements' willful misfeasance, bad faith or gross negligence in the performance of its duties or by reason of its reckless disregard of its obligations and duties under this Agreement.

9.   (a)   This Agreement shall become effective on March 3, 1997 and shall continue in effect through July 22, 1998. This Agreement, unless sooner terminated in accordance with 9(b) below, shall continue in effect from year to year thereafter provided that its continuance is specifically approved at least annually (1) by a vote of the majority of the members of the Board of Directors of the Company or by a vote of a majority of the outstanding voting securities of each Portfolio, and (2) in either event, by the vote of a majority of the members of the Company's Board of Directors who are not parties to this Agreement or interested persons of any such party, cast in person at a meeting called for the purpose of voting on this Agreement.

(b)   This Agreement (1) may be terminated with respect to each Portfolio at any time without the payment of any penalty either by vote of the members of the Board of Directors of the Company or by a vote of a majority of any Portfolio's outstanding voting securities, or by HIFSCO on written notice to Wellington Management, (2) shall immediately terminate in the event of its assignment, (3) may be terminated by Wellington Management on ninety days' prior written notice to HIFSCO, but such termination will not be effective until HIFSCO shall have contracted with one or more persons to serve as a successor Sub-Adviser for the Portfolio (or HIFSCO or an affiliate of HIFSCO agrees to manage the Portfolio) and such person(s) shall have assumed such position, and (4) will terminate automatically upon termination of the advisory agreement between HIFSCO and the Company of even date herewith.

(c)   As used in this Agreement, the terms "assignment," "interested parties" and "vote of a majority of the Company's outstanding voting securities" shall have the meanings set forth for such terms in the Investment Company Act of 1940, as amended.

(d)   Any notice under this Agreement shall be given in writing, addressed and delivered, or mailed postpaid, to the other party or parties at the current office address provided by each party.

4

10. Nothing in this Agreement shall limit or restrict the right of any partner, officer, or employee of Wellington Management to engage in any business or to devote his or her time and attention in part to the management or other aspects of any other business, whether of a similar nature or a dissimilar nature, nor to limit or restrict the right of Wellington Management to engage in any other business or to render services of any kind to any other corporation, firm, individual or association.

11. HIFSCO agrees that neither it nor any affiliate of HIFSCO will use Wellington Management's name or refer to Wellington Management or Wellington Management's clients in marketing and promotional materials without prior notification to and authorization by Wellington Management, such authorization not to be unreasonably withheld.

12. If any provision of this Agreement shall be held or made invalid by a court decision, statute, rule or otherwise, the remainder of this Agreement shall not be affected thereby.

13. The amendment of this Agreement for the sole purpose of adding one or more Portfolios shall not be deemed an amendment affecting an already existing Portfolio and requiring the approval of shareholders of that Portfolio.

14. To the extent that federal securities laws do not apply, this Agreement and all performance hereunder shall be governed by the laws of the State of Connecticut which apply to contracts made and to be performed in the State of Connecticut.

**[The remainder of this page is left blank intentionally.]**

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed on the 3rd day of March, 1997.

HARTFORD INVESTMENT FINANCIAL
SERVICES COMPANY


By: _____
Name:        Joseph H. Gareau
Title:        Executive Vice President


WELLINGTON MANAGEMENT COMPANY, LLP


By: _____
Name:   Robert W. Doran
Title:    Chairman

AMENDMENT NUMBER 1 TO INVESTMENT SUB-ADVISORY AGREEMENT

The Investment Sub-Advisory Agreement between Hartford Investment Financial Services Company and Wellington Management Company, LLP ("Wellington Management") dated March 3, 1997 (the "Agreement") is hereby amended to include The Hartford MidCap Fund (the "Fund") as an additional Portfolio.  All provisions in the Agreement shall apply to the Fund except as follows:

1.      Wellington Management shall be paid a fee accrued daily and paid quarterly, based upon the following annual rates and upon the calculated daily net asset value of the Fund:

| Net Asset Value | Annual Rate |
|---|---|
| First $50,000,000 | 0.40% |
| Next $100,000,000 | 0.30% |
| Next $350,000,000 | 0.25% |
| Next $500,000,000 | 0.20% |
| Amount Over $1 Billion | 0.175% |

Wellington Management shall waive 100% of its fees until the assets of the Fund reach $100 million, and, thereafter, 50% of its fees until the assets reach $500 million, and, thereafter, 25% of its fees until the assets of the Fund reach $1 billion, exclusive of seed money.

2.      The effective date for this Amendment shall be December 31, 1997.  The initial term of the amended Agreement with respect to the Fund shall be for a two-year period subject to continuance or termination as specified in Sections 9(a) and 9(b) of the Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed on the 29      day of December      , 1997.

HARTFORD INVESTMENT FINANCIAL
SERVICES COMPANY

By      Joseph H. Gareau
Title:  Executive Vice President

WELLINGTON MANAGEMENT COMPANY, LLP

By:      Robert W. Doran
Title:  Chairman

O:\WP\KC\PFAGREE\HIFSCOPU.AMD

## AMENDMENT NUMBER 2 TO INVESTMENT SUB-ADVISORY AGREEMENT

The Investment Sub-Advisory Agreement between Hartford Investment Financial Services Company and Wellington Management Company, LLP ("Wellington Management") dated March 3, 1997, as amended by Amendment Number 1 to Investment Sub-Advisory Agreement dated December 31, 1997 (the "Agreement") is hereby amended to include The Hartford Growth and Income Fund (the "Fund") as an additional Portfolio. All provisions in the Agreement shall apply to the Fund except that the management fee shall be as follows:

A fee accrued daily and paid quarterly, based upon the following annual rates and upon the calculated daily net asset value of the Fund:

| Net Asset Value | Annual Rate |
| --- | --- |
| First $50,000,000 | 0.325% |
| Next $100,000,000 | 0.250% |
| Next $350,000,000 | 0.200% |
| Next $500,000,000 | 0.150% |
| Amount Over $1 Billion | 0.125% |

Wellington Management shall waive 100% of its sub-advisory fee until shareholder assets of the Fund reach $50 million (exclusive of money invested by HIFSCO or its affiliates).

IN WITNESS WHEREOF, the parties hereto have caused this amendment to be executed on the 30th day of April, 1998.

HARTFORD INVESTMENT FINANCIAL
SERVICES COMPANY

By: _____
     Joseph H. Gareau
Title:   Executive Vice President


WELLINGTON MANAGEMENT
COMPANY, LLP

By: _____
     Duncan M. McFarland
Title:   President and Chief Executive Officer

## AMENDMENT NUMBER 3 TO INVESTMENT SUB-ADVISORY AGREEMENT

The Investment Sub-Advisory Agreement between Hartford Investment Financial Services Company and Wellington Management Company, LLP ("Wellington Management") dated March 3, 1997, as amended by Amendment Number 1 to Investment Sub-Advisory Agreement dated December 31, 1997 and Amendment Number 2 to Investment Sub-Advisory Agreement dated April 30, 1998 (the "Agreement") is hereby amended to include The Hartford Global Leaders Fund (the "Fund") as an additional Portfolio. All provisions in the Agreement shall apply to the Fund except that the management fee shall be as follows:

A fee accrued daily and paid quarterly, based upon the following annual rates and upon the calculated daily net asset value of the Fund:

| Net Asset Value | Annual Rate |
| --- | --- |
| First $50,000,000 | 0.40% |
| Next $100,000,000 | 0.30% |
| Next $350,000,000 | 0.25% |
| Next $500,000,000 | 0.20% |
| Amount Over $1 Billion | 0.175% |

Wellington Management shall waive 100% of its sub-advisory fee until shareholder assets of the Fund reach $50 million (exclusive of money invested by HIFSCO or its affiliates).

IN WITNESS WHEREOF, the parties hereto have caused this amendment to be executed on the 30th day of September, 1998.

HARTFORD INVESTMENT FINANCIAL
SERVICES COMPANY

By: _____
        Joseph H. Gareau
        Executive Vice President

WELLINGTON MANAGEMENT  COMPANY, LLP

By: _____

Title: Robert W. Doran, Chairman

f:\wd\cmd\mutfunds\agtspub1.doc

## AMENDMENT NUMBER 4 TO
INVESTMENT SUB-ADVISORY AGREEMENT

The Investment Sub-Advisory Agreement between Hartford Investment Financial Services Company and Wellington Management Company, LLP ("Wellington Management") dated March 3, 1997, as amended (the "Agreement") is hereby amended to include The Hartford Global Health Fund and The Hartford Global Technology Fund (the "New Funds") as two new Portfolios. All provisions in the Agreement shall apply to the New Funds except as stated below.

The sub-advisory fee for the New Funds shall be accrued daily and paid quarterly, based upon the following annual rates and upon the calculated daily net asset value of each New Fund:

| Net Asset Value | Annual Rate |
| --- | --- |
| First $100,000,000 | .45% |
| Next $400,000,000 | .35% |
| Amount Over $500,000,000 | .30% |

Wellington Management will waive sub-advisory fees on the first $50 million of assets (excluding seed money) for each New Fund.

This amended Agreement is effective for a period of two years from the date hereof and shall continue in effect thereafter in accordance with the provisions of Section 9 of the Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this amendment to be executed on the 28 day of April, 2000.

HARTFORD INVESTMENT FINANCIAL
SERVICES COMPANY

By: _____
David M. Znamierowski
Senior Vice President, Investments


WELLINGTON MANAGEMENT COMPANY, LLP

By: _____
Duncan M. McFarland
President and Chief Executive Officer

AMENDMENT NUMBER 5 TO
INVESTMENT SUB-ADVISORY AGREEMENT

The Investment Sub-Advisory Agreement between Hartford Investment Financial Services Company and Wellington Management Company, LLP ("Wellington Management") dated March 3, 1997, as amended (the "Agreement") is hereby amended to include The Hartford Global Communications Fund, The Hartford Global Financial Services Fund and The Hartford Growth Fund (the "New Funds") as three new Portfolios. All provisions in the Agreement shall apply to the New Funds except as stated below.

The sub-advisory fee shall be accrued daily and paid quarterly, based upon the following annual rates and upon the calculated daily net asset value of The Hartford Global Communications Fund and The Hartford Global Financial Services Fund:

| Net Asset Value | Annual Rate |
|---|---|
| First $100 million | 0.450% |
| Next $400 million | 0.350% |
| Amount Over $500 million | 0.300% |

The sub-advisory fee shall be accrued daily and paid quarterly, based upon the following annual rates and upon the calculated daily net asset value of The Hartford Growth Fund:

| Net Asset Value | Annual Rate |
|---|---|
| First $50 million | 0.400% |
| Next $100 million | 0.300% |
| Next $350 million | 0.250% |
| Next $500 million | 0.200% |
| Amount Over $1 billion | 0.175% |

Wellington Management will waive sub-advisory fees on the first $50 million of assets (excluding seed money) for each of the New Funds.

This amended Agreement is effective for a period of two years from the date hereof and shall continue in effect thereafter in accordance with the provisions of Section 9 of the Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this amendment to be executed on the 30th day of October, 2000.

HARTFORD INVESTMENT FINANCIAL SERVICES COMPANY

By: _____
David M. Znamierowski
Senior Vice President, Investments

WELLINGTON MANAGEMENT COMPANY, LLP

By: _____

b323

original 6321

## AMENDMENT NUMBER 6 TO
## INVESTMENT SUB-ADVISORY AGREEMENT

The Investment Sub-Advisory Agreement between Hartford Investment Financial Services Company and Wellington Management Company, LLP ("Wellington Management") dated March 3, 1997, as amended (the "Agreement") is hereby amended to include The Hartford Focus Fund, The Hartford International Capital Appreciation Fund, The Hartford International Small Company Fund, The Hartford MidCap Value Fund and The Hartford Value Fund (the "New Funds") as five new Portfolios. All provisions in the Agreement shall apply to the New Funds except as stated below.

The sub-advisory fee for each New Fund shall be accrued daily and paid quarterly, based upon the following annual rates and upon the calculated daily net asset value as stated below:

The Hartford Focus Fund

| Net Asset Value | Annual Rate |
| --- | --- |
| First $50 million | 0.400% |
| Next $100 million | 0.300% |
| Over $150 million | 0.250% |

The Hartford International Capital Appreciation Fund

| Net Asset Value | Annual Rate |
| --- | --- |
| First $50 million | 0.400% |
| Next $100 million | 0.300% |
| Next $350 million | 0.250% |
| Over $500 million | 0.225% |

The Hartford International Small Company Fund

| Net Asset Value | Annual Rate |
| --- | --- |
| First $50 million | 0.400% |
| Next $100 million | 0.350% |
| Over $150 million | 0.275% |

The Hartford MidCap Value Fund

| Net Asset Value | Annual Rate |
| --- | --- |
| First $50 million | 0.400% |
| Next $100 million | 0.300% |
| Next $350 million | 0.250% |
| Over $500 million | 0.200% |

The Hartford Value Fund

| Net Asset Value | Annual Rate |
|---|---|
| First $50 million | 0.350% |
| Next $100 million | 0.275% |
| Next $350 million | 0.225% |
| Over $500 million | 0.175% |

Wellington Management will waive sub-advisory fees for each New Fund until assets reach $50 million (excluding seed money) or until six (6) months from seeding the Fund, whichever occurs first.

This amended Agreement is effective for a period of two years from the date hereof and shall continue in effect thereafter in accordance with the provisions of Section 9 of the Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this amendment to be executed on the 30th day of April, 2001.

HARTFORD INVESTMENT FINANCIAL
SERVICES COMPANY

By: _____
David M. Znamierowski
Senior Vice President, Investments

WELLINGTON MANAGEMENT
COMPANY, LLP

By: _____
Duncan M. McFarland
President and Chief Executive Officer

## AMENDMENT NUMBER 7 TO
### INVESTMENT SUB-ADVISORY AGREEMENT

The Investment Sub-Advisory Agreement between Hartford Investment Financial Services, LLC (formerly known as Hartford Investment Financial Services Company) and Wellington Management Company, LLP ("Wellington Management") dated March 3, 1997, as amended (the "Agreement") is hereby amended to include *The Hartford Equity Income Fund* (the "New Fund") as a new Portfolio. All provisions in the Agreement shall apply to the New Fund except as stated below.

The sub-advisory fee shall be accrued daily and paid quarterly, based upon the following annual rates and upon the calculated daily net asset value of *The Hartford Equity Income Fund*:

| Net Asset Value | Annual Rate |
|---|---|
| First $50,000,000 | 0.350% |
| Next $100,000,000 | 0.275% |
| Next $350,000,000 | 0.225% |
| Amount Over $500,000,000 | 0.175% |

Wellington Management will waive sub-advisory fees until assets reach $50 million (excluding seed money) or until six (6) months from seeding the New Fund, whichever occurs first.

This amended Agreement is effective for a period of two years from the date hereof and shall continue in effect thereafter in accordance with the provisions of Section 9 of the Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this amendment to be executed on the 25th day of August, 2003.

HARTFORD INVESTMENT FINANCIAL SERVICES, LLC

By: _____
David M. Znamierowski
Senior Vice President

WELLINGTON MANAGEMENT COMPANY, LLP

By: _____
Perry M. Traquina
President

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Affidavit was mailed first-class, postage prepaid, on this 20th day of December, 2004, to:

Kim E. Levy
Michael R. Reese
Steven G. Schulman
Milberg Weiss Bershad& Schulman
One Pennsylvania Plaza
Suite 4915
New York, NY 10119-0165

Brian C. Fournier
J. Daniel Sagarin
David A. Slossberg
Hurwitz Sagarin & Slossberg
147 North Broad Street
PO Box 112
Milford, CT 06460-0112

Charles J. Piven
Marshall N. Perkins
Law Offices of Charles J. Piven, P.A.
The World Trade Center – Baltimore
401 East Pratt Street, Suite 2525
Baltimore, MD 21202

Jeffrey S. Nobel
Andrew M. Schatz
Schatz & Nobel
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT 06103

Patrick A. Klingman
Shepard Finkelman Miller & Shah
65 Main Street
Chester, CT 06412

David Randell Scott
Erin Green Comite
Neil Rothstein
Scott & Scott
108 Norwich Avenue
PO Box 192
Colchester, CT 06415

Eric J. Belfi
Brian P. Murray
Murray Frank & Sailer
275 Madison Avenue, Suite 801
New York, NY 10016

Stuart J. Baskin
Jerome S. Fortinsky
John D. Roesser
Scott C. Shelley
Vikram Sidhu
Shearman & Sterling
599 Lexington Avenue
New York, NY 10022

Thomas J. Groark, Jr.
Mitchell R. Harris
Maureen O'Connor
Day Berry & Howard
CityPlace I
185 Asylum Street
Hartford, CT 06103-3449

Katherine Ann Burroughs
Robert E. Grady
Samuel A. Gunsburg
Dechert LLP
90 State House Square – 12th Floor
Hartford, CT 06103

William Kennedy Dodds
Samuel A. Gunsburg
Dechert LLP
30 Rockefeller Plaza
New York, NY 10112-2200

David A. Kotler
Dechert LLP
Princeton Pike Corporate Center
PO Box 5218
Princeton, NJ 08543-5218

Ira K. Gross
William T. Matlack
Sullivan & Worcester
One Post Office Square
Boston, MA 02109

Francis J. Brady